ROBERT CLAYTON *v*. STATE OF INDIANA.

[No. 2-476A165. Filed September 22, 1976. Rehearing denied October 25, 1976. Tranfer denied June 13, 1977.]

*Kenneth T. Roberts, Wilson, Coleman & Roberts,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Walter F. Lockhart,* Deputy Attorney General, for appellee.

SULLIVAN, J.—Appellant Robert Clayton (Clayton) appeals his conviction for second degree burglary[1] of an Indianapolis gas station on October 6, 1975.

The elements of second degree burglary are: (1) breaking and (2) entering into a building other than a dwelling house or place of human habitation (3) with the intent to commit a felony therein. *Cook* v. *State* (1972), 258 Ind. 667, 284 N.E.2d 81; *Carter* v. *State* (1976), Ind. App., 345 N.E.2d 847; *Apple* v. *State* (1973), 158 Ind. App. 663, 304 N.E.2d 321.

---

1. Ind. Ann. Stat. 35-13-4-4(b) (Burns Code Ed. 1975).

The only issue presented to us on appeal is whether the evidence is sufficient to establish the elements of breaking and of specific intent to commit a felony. In reviewing the sufficiency of the evidence to establish these elements, we may not weigh the evidence or judge the credibility of the witnesses. Furthermore, we must consider only the evidence most favorable to the State, together with reasonable and logical inferences which may be drawn therefrom. *Siblisk* v. *State* (1975), 263 Ind. 651, 336 N.E.2d 650; *Lisenko* v. *State* (1976), Ind. App., 345 N.E.2d 869. It was, however, incumbent upon the State at trial to present sufficient evidence to establish all elements of the crime beyond a reasonable doubt. *Easton* v. *State* (1967), 248 Ind. 338, 228 N.E.2d 6; *Carter* v. *State, supra.* If there is evidence of probative value to support a conviction, that judgment will be sustained. *Sharp* v. *State* (1970), 254 Ind. 435, 260 N.E.2d 593.

We find that there is no evidence of probative value to establish Clayton's specific intent to commit a felony in the gas station building and accordingly reverse.

The facts most favorable to the State reveal that Officer Daniel Wade of the Indianapolis Police Department was patrolling the district in which the gas station was located in the early morning of October 6, 1975. A parking lot enterprise was operated in conjunction with the gasoline filling station. Wade noticed that the overhead door of the building was open and that Clayton was inside using the telephone. Having worked that particular district for seven years, Officer Wade knew that the station was not normally open at that hour, so he observed Clayton for about two minutes. He then walked into the building and asked Clayton what he was doing there. Clayton replied that he was trying to contact the owner of the premises. The officer called John Grimme, the owner, and ascertained that Clayton did not have permission to be in the building. Grimme was asked to come to the gas station. In

the meantime, Officer Wade kept Clayton at the station. When Grimme arrived, he found that a window on the building had been broken and that the gasoline price sign had been moved from a crate inside the bay of the garage to outside the building, where it was leaning against a gasoline pump. Nothing else was disturbed. Officer Wade then placed Clayton under arrest for second degree burglary. Clayton professed his innocence and resisted arrest. Testimony of Grimme and Herbert Stratton, the parking lot attendant at the gas station, indicated that both had known Clayton prior to the alleged burglary, Stratton for about three years. For about a month prior to the incident, Clayton came to the building every day for lunch and spent several hours there, walking inside the building and answering the telephone for Stratton when he was out on the lot. Stratton also testified that he had been at the lot on Sunday, October 5, the day before the incident, and that the building had been locked and secure with no windows broken.

Mere breaking and entering or unexplained presence in or about the premises is insufficient to establish intent to commit a felony. *Faulkner* v. *State* (1973), 260 Ind. 82, 292 N.E.2d 594; *Nichols* v. *State* (1973), 157 Ind. App. 605, 301 N.E.2d 246. While an element of an offense (here, intent to commit a felony) may be proven by circumstantial evidence, evidence which establishes only a suspicion of guilt is insufficient to meet the State's burden of proof beyond a reasonable doubt. *Tom* v. *State* (1973), 261 Ind. 295, 302 N.E.2d 494; *Nichols* v. *State, supra.*

The evidence in this case establishes at best a mere suspicion of guilt. The State hypothesizes that it is reasonable to infer that Clayton intended to steal gasoline or to sell gasoline for his own profit while the business was closed. There is nothing of record to indicate what Clayton was doing in the building other than his own statement to Officer Wade that he was trying to contact Grimme.

Although the gasoline price sign had been moved, nothing else in the building was disturbed, nor does the record permit any reasonable inference that the removal of the sign was preliminary to, or part of a plan to commit any felony. Thus this case is distinguishable from those in which felonious intent has been inferred from the gathering together of valuable property from the building, *Robinson* v. *State* (1971), 257 Ind. 38, 271 N.E.2d 727; *Young* v. *State* (1971), 257 Ind. 173, 273 N.E.2d 285; *Smith* v. *State* (1970), 254 Ind. 401, 260 N.E.2d 558; *Wilson* v. *State* (1973), 157 Ind. App. 648, 301 N.E.2d 392; *Davis* v. *State* (1972), 153 Ind. App. 340, 287 N.E.2d 590, and cases where a building has been ransacked or otherwise disarranged. *O'Hara* v. *State* (1975), 165 Ind. App. 11, 330 N.E.2d 396; *Felts* v. *State* (1973), 156 Ind. App. 652, 298 N.E.2d 462; *Ware* v. *State* (1972), 152 Ind. App. 582, 284 N.E.2d 543. While specific intent has been inferred when property from inside the building has been found outside, the displaced property has either been valuable and/or there have been other factors circumstantially indicating intent, e.g., flight or the possession of burglary tools. *Tinsley* v. *State* (1975), 164 Ind. App. 683, 330 N.E.2d 399; *Sargent* v. *State* (1973), 156 Ind. App. 469, 297 N.E.2d 459; *Goodrich* v. *State* (1973), 158 Ind. App. 416, 302 N.E.2d 885. In the case before us, the change in position of the sign stands alone, and no inference is possible from evidence of record that removal of the sign was necessary or in aid of an attempt to commit a felony.

We find this case to be more closely akin to those in which the intent of the intruder was shown to be, at best, ambiguous. In *Easton* v. *State, supra,* for example, the lock on an apartment door had been broken and the appellant was discovered inside the apartment watching television. The record player was unplugged and records which had been on the record player were sitting on the floor. When discovered, the appellant offered to pay for the lock and casually left. Since there was no evidence of flight, hiding, or burglary tools, the Supreme

Court reversed the conviction, holding that a suspicion of guilt or opportunity to commit a felony is insufficient to sustain a conclusion of guilt. Numerous cases have found presence in a building with no evidence of property being moved or disturbed insufficient to support an inference of specific intent to commit a felony. *Faulkner* v. *State, supra; Crawford* v. *State, supra; Carter* v. *State, supra; Lisenko* v. *State, supra.* In *Nichols* v. *State, supra,* this district found that the fact that a tool box had been moved 12 to 15 feet and the lid opened was insufficient to sustain a finding of guilt.

. Here, Clayton made no attempt to flee or hide, no burglary tools were found, Clayton's only statement were professions of innocence, and the movement of the property was not only minimal, but also ambiguous. The record does not establish any facts which would allow a reasonable inference of Clayton's specific intention.

The judgment is reversed and the cause remanded to the trial court with instructions to discharge Clayton.

White, J., concurs; Buchanan, P.J., dissents, with separate opinion.

## DISSENTING OPINION

BUCHANAN, P.J.—I respectfully dissent from the majority opinion because there is evidence to support a reasonable inference of the specific intent of Clayton to commit the felony of theft in the service station.

As recently emphasized in *Kash* v. *State,*[1] when the sufficiency of circumstantial evidence is questioned:

this Court must carefully examine the evidence most favorable to the State, not to determine whether every reasonable hypothesis of innocence is overcome, but to determine whether reasonable persons could form an inference with regard to each material element of the offense so as to ascertain defendant's guilt beyond a reasonable doubt.

---

1. (1975), 166 Ind. App. 666, 337 N.E.2d 573.

*McAfee* v. *State* (1973), 259 Ind. 687, 291 N.E.2d 554; *Traylor* v. *State* (1975), 164 Ind. App. 50, 326 N.E.2d 614.[2]

Even more specifically, in *Farno* v. *State*,[3] we recognized our mandate not to reweigh the evidence if there exist two reasonable inferences, one of guilt and one of innocence:

> If the circumstantial evidence bearing upon [an element of the crime] could reasonably lead to either of two inferences, one of guilt and one of innocence, an appellate tribunal is not free to reweigh the evidence and determine which should have predominated in the mind of the trier of fact.[4]

The evidence[5] in the record as to specific intent to commit theft could reasonably have lead the jury to an inference of Clayton's innocence or reasonably have lead it to an inference of guilt.

Creating a reasonable inference of guilt is this circumstantial evidence:

(1) the overhead door to the garage bay had been opened (this was not evidence of the breaking in, as the point of entry was a broken rear window) ;[6]

(2) a gas price sign had been moved from the inside bay and leaned against an outside pump;

(3) Clayton was observed using the telephone for two minutes.

---

2. *Id.* at 574.

3. (1974), 159 Ind. App. 627, 308 N.E.2d 724.

4. *Id.* at 725-26 (citations omitted).

5. This is not a case in which there is an absolute dearth of evidence on specific intent—as there was in those cases in which the Indiana Supreme Court found such evidence lacking. *See Faulkner* v. *State* (1973), 260 Ind. 82, 292 N.E.2d 594 (broken window, flight, pistol; nothing disturbed or missing); *Crawford* v. *State* (1968), 251 Ind. 437, 241 N.E.2d 795 (broken window, hiding; nothing removed or disturbed); *Goodloe* v. *State* (1967), 248 Ind. 411, 229 N.E.2d 626 (flight, pry marks in open office; no burglary tools and nothing taken); *Easton* v. *State* (1967), 248 Ind. 338, 228 N.E.2d 6.

*See also Lisenko* v. *State* (1976), Ind. App., 345 N.E.2d 869 (pry bars, surrender; nothing missing or disturbed; *Carter* v. *State* (1976), Ind. App., 345 N.E.2d 847 (pistol, surrender; nothing missing or disturbed, no burglary tools).

6. "[W]e must look to the evidence other than that concerning the breaking and entering *alone* to determine if there was sufficient evidence to show an intent to commit a felony." *Kondrup* v. *State* (1968), 250 Ind. 320, 323, 235 N.E.2d 703, 705 (emphasis in original).

This evidence reasonably supports an inference that Clayton had opened the overhead doors to remove inside valuables, had begun such removal as evidenced by the sign taken outside, and was in the process of calling an accomplice.

On numerous occasions a reasonable inference of guilt has been held to be sufficient evidence to support a judgment of guilt.[7]

The majority rely on *Easton* v. *State*[8] which is unlike this case because Clayton opened a door and actually removed property (the sign) of the owner. The facts before us are closer to *Kondrup* v. *State*,[9] which I consider adequate precedent, along with *Cooper* v. *State*,[10] to affirm the judgment.

The jury had two reasonable inferences from the circumstantial evidence before it, one of guilt and one of innocence; they chose guilt. The majority of this court have reweighed the evidence and chosen innocence.

The conviction should be affirmed.

NOTE.—Reported at 354 N.E.2d 338.

---

7.   *See Carter* v. *State* (1976), Ind. App., 345 N.E.2d 847, 848 n. 4, in which Judge Staton compiled appellate decisions finding sufficient circumstantial evidence on intent and concluded that they all contained some evidence of "the presence of burglary tools or of missing or disturbed property."

8.   *Supra* note 5.

9.   *Supra* note 6 (defendant observed inside store loading a gun earlier in its rack). The Indiana Supreme Court used *Kondrup* to distinguish *Easton*, pointing out that the defendant in *Easton* was "sitting and watching television. Upon being discovered he got up and left, taking nothing." 250 Ind. at 323, 235 N.E.2d at 705.

10.   (1975), 165 Ind. App. 471, 332 N.E.2d 843 (defendant wheeling refrigerator to which he claimed ownership).